UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| STEVEN M. TAYLOR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:14-CV-265-JRG-MCLC |
| NATHANIEL LOGAN BUCKLES, *et al.*, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil matter is before the Court on the joint motion for summary judgment of defendants Ron Street and Tom Smith (movants) [Doc. 61]. Plaintiff responded in opposition to summary judgment [Doc. 69], movants replied in turn [Doc. 72], and plaintiff submitted a sur-reply [Doc. 76]. The following motions by plaintiff are also before the Court: a motion to "show just cause" [Doc. 58]; a motion for an extension of time to reply to defendants' motion for summary judgment [Doc. 64]; a motion to compel discovery [Doc. 65]; a motion for the appointment of counsel [Doc. 66]; and a motion to "deem service of process" effective against a defendant who is not a party to the motion for summary judgment—Nathaniel Buckles [Doc. 74]. The Court will grant the motion for summary judgment, grant plaintiff's motion for an extension nunc pro tunc, and deny plaintiff's requests to "show just cause," to compel discovery, for counsel, and to "deem service of process" effective. All of plaintiff's causes of action will be dismissed with prejudice.

I.  BACKGROUND

   A.  **Procedural**

Plaintiff filed the instant action under 42 U.S.C. § 1983 against several defendants including Carter County Sheriff Chris Mathis (Sheriff Mathis), Chief Deputy Sheriff Ron Street (Chief Street); Captain Steven Taylor (Cpt. Taylor), and Correction Officer Nathanial Buckles (Officer Buckles) [Doc. 2]. In that complaint, plaintiff claimed that he complained to "state inspectors" about the jail policy of opening and closing the cell doors "every hour on the hour day and night" and that Officer Buckles retaliated against him by placing a member of a white supremacist gang into his cell on two seperate occasions despite the fact that doing so put plaintiff, a black man, at serious risk of physical injury. [*Id.*]. Plaintiff filed two amended complaints containing several novel theories of liability and identifying new defendants [Docs. 20, 31, 34]. In one of the new claims, plaintiff accused Deputy Street and Cpt. Smith of altering prison policy so that all cell inspections would occur between the hours of 10:00 p.m. and 3:00 a.m. as retaliation for plaintiff filing grievances about the retaliatory placement of "racist" gang members in his cell; in another, he clarified that Officer Buckles was only responsible for the first cell mate placement and that three unnamed defendants were responsible for the second incident [*Id.*]. This Court performed its screening obligations under 28 U.S.C. § 1915, *sua sponte* dismissing the causes of action and defendants for which plaintiff had failed to state a viable claim [Docs. 7, 26, 33]. At the conclusion of that process, this Court stated the following:

> To summarize, the only claims which remain in this case, and to which all defendants should file an answer or other response, are as follows:
>
> (1) plaintiff's claim that defendant Corrections Officer Buckles retaliated against him for his act of speaking to jail inspectors about the jail doors being opened every hour by placing a racist gang member in plaintiff's cell;
>
> (2) plaintiff's claim that the three John Doe jailers also retaliated against him for his act of speaking to jail inspectors about the jail doors being opened every hour by placing a racist gang member in plaintiff's cell; and

(3) plaintiff's claim that defendants Street and Smith retaliated against him for filing grievances and/or speaking to jail officials by making a policy that cell inspections would occur between 10 p.m. and 3 a.m.

[Doc. 33 pp. 9–10]. No additional claims or defendants have been added [Docs. 51, 56].[1]

Chief Street and Cpt. Smith (movants) filed the instant motion for summary judgment on June 10, 2016 [Doc. 61]. In that motion, they claim the following: plaintiff has not exhausted administrative remedies for the claim asserted against them, i.e., retaliatory alteration of the prison inspection policy; and, regardless, they are entitled to qualified immunity under the "undisputed facts" of this case [Docs. 61, 63]. In support of the request, Chief Street and Cpt. Smith filed a memorandum and statement of facts [Docs. 41, 42]. Plaintiff has responded [Doc. 69], filed his own affidavits of fact [Docs. 69-1, 70], and filed a sur-reply to movants' reply [Docs. 72, 76].

### B. Factual[2]

Plaintiff is an inmate in the custody of the Tennessee Department of Corrections (TDOC) who was incarcerated at Carter County Jail from September 14, 2013 until he was moved to Johnson County Jail on May 9, 2014 [Doc. 69-1 ¶ 2]. During that period of incarceration, Carter County Jail had a policy under which cell inspections were performed at the discretion of the correctional officers, i.e., could take place at any hour of the day or night based on when the correctional officers had time to complete the inspections [Doc. 61-1 ¶¶ 6–7; Doc. 61-2 ¶¶ 6–7; Exhibit B]. According to a General Order, inspections could occur "at any time," "without

---

[1] The Court dismissed Sheriff Mathis as a defendant because suits under § 1983 are incapable of supporting liability based solely on the concept of respondeat superior [Doc. 7, 33], and denied multiple attempts to add Eighth Amendment claims alleging deliberate indifference and cruel and unusual punishment by Officer Buckles and the John Does [Docs. 26, 33, 56].

[2] Both parties have submitted sworn affidavits and exhibits in support of their positions [Docs. 2-1, 61-1, 62-2, 69-1, 70]. The following factual summary is derived from those filings.

warning and irregularly," and that "inmates [should] be monitored continuously" [*Id.*]. At no point during plaintiff's term of incarceration did either Chief Street or Cpt. Smith change that policy to require that cell inspections take place at nighttime hours or between 10:00 p.m. and 3:00 a.m. [*Id.*].

Carter County Jail had a grievance process available to inmates at all relevant times [Doc. 61-1 ¶ 3; Doc. 61-2 ¶ 3]. An inmate with a problem or issue could request a hard copy grievance form from any correction officer [*Id.*]. The inmate would fill out the form and return it to the officer, who would in turn take the grievance to their supervisor [Doc. 61-1 ¶ 4; Doc. 61-2 ¶ 4]. After the supervisor noted on the form whether or not the complained-of issue had been resolved, he would deliver that document to Cpt. Smith for evaluation and resolution [*Id.*]. After Cpt. Smith made his determination about whether, and to what extent, a resolution was needed, he would forward the completed grievance to Chief Street, who would "review [that decision] to ensure policy conformity," initial the completed grievance to show that he had done so, and send the initialed decision back to the inmate [*Id.*]. If the inmate disagreed with the decision, he had three days within which to appeal the grievance to the Sheriff [*Id.*]. In the case of appeal, an appeal form would be provided to the Sheriff for his assessment and final determination and the completed grievance appeal form would be returned to the inmate [*Id.*].

Until the end of 2013, Carter County Jail used a single-purpose grievance form, meaning inmate requests were submitted through a different process and on a different form [Doc. 61-1 ¶ 2; 61-2 ¶ 2]. Beginning in 2014, however, Carter County Jail streamlined the process and switched to a multi-purpose form on which inmates checked a box indicating whether the filing was a "request" or "grievance" [*Id.*]. Plaintiff had experience using both types of form [*Id.;* Exhibit A].

On April 15, 2014, plaintiff submitted a multi-purpose form with the "request" option selected in which he inquired about the status of a grievance that he had allegedly submitted ten days earlier but for which he had not yet received a response [Doc. 2-1 p. 1]. In the response section, Cpt. Smith explained that he had gotten a bit behind on responding to grievances because he had been out due to an illness and promised that he had begun working on that backlog [*Id.*].

On April 25, 2014, plaintiff submitted another multi-purpose form with the "request" option selected explaining that he was still waiting on a reply to the grievance referenced in the request sent ten days earlier [*Id.* at 2]. In his response, Cpt. Smith noted that the backlog of grievances had been completed, agreed that plaintiff should have gotten a response by now, and asked another officer to "please check on [the matter]" [*Id.*]. An individual with the initials JP—presumably the individual tasked with finding plaintiff's grievance—explained that no record of the grievance could be found and asked plaintiff to "please resend the grievance again" [*Id.*].

On April 30, 2014, plaintiff submitted a third multi-purpose form with the "request" option selected [*Id.* at 3]. Unlike his prior two requests, plaintiff did not mention the missing grievance and instead requested the "full name" and "domicile" of Chief Street and Cpt. Smith for "use in [his] civil rights complaint" [*Id.*]. Cpt. Smith declined to provide the information because plaintiff did not need that information to file a civil suit; Chief Street wrote plaintiff the following message: "[I]f you have a problem you should let us know what it is. It might be resolved" [*Id.*].

On May 6, 2014, plaintiff submitted a fourth multi-purpose form with the "request" option selected complaining again that he had not received a reply to the missing grievance "about [the] violation of the Tenn[essee] Const[itution]" and his "civil rights" [*Id.* at 4]. He

5

noted that he had received replies to all three of his requests about the grievance, but no response to the grievance itself [*Id.*]. In his response, Cpt. Smith explained that he had "responded to all [of] the grievances that [he] ha[d] received" [*Id.*]. In a separate notation on the same document, Capt. Smith noted that he went to speak with plaintiff about the matter and that plaintiff told him "they did not have to open the doors every hour" and that the Tennessee Constitution "mandates [that] he receive eight hours of uninterrupted sleep [a night]" [*Id.* at 3–4]. He also noted that plaintiff informed him that officers had placed members of "the [Aryan] Brotherhood" in his cell on at least one occasion [*Id.*], and inquired about the status of a § 1983 complaint which had been "sent to the commissary company" and returned without notarization [*Id.* at 4]. Cpt. Smith suggested that plaintiff "address a grievance to the Sheriff" if his "answers to the issues were not sufficient" [*Id.*].

On February 11, 2015, Plaintiff filed an amended complaint claiming that Chief Street and Cpt. Smith had instituted a new cell inspection policy as retaliation against him for filing grievances, speaking to a state inspector about the cell doors being opened every hour, and suing several officers under § 1983 [Doc. 20]. Chief Street and Cpt. Smith deny that they ever changed Carter County Jail cell inspection policy, that they knew about conversations between plaintiff and state inspectors, or that they ordered any correctional officer to inspect plaintiff's cell at any time for any retaliatory purpose [Doc. 61-1 ¶¶ 6, 8–9; Doc. 61-2 ¶¶ 6, 8–9]. While both individuals acknowledge that plaintiff filed numerous grievance on a variety of issues, neither remembers plaintiff submitting a grievances alleging that they had altered the prison cell inspection policy in retaliation against him [Doc. 61-1 ¶ 5; Doc. 61-2 ¶ 5]. Further, neither individual has been able to locate such a grievance during their search of Carter County Jail grievance records [*Id.*]. Without contradicting their account of events, plaintiff claims that he

6

"made it clear to [Chief Street and Cpt. Smith], while exhausting the grievance procedure on different issues, that [he] intended to file a . . . complaint for their violation of [his] civil rights" [Docs. 69-1, 70].

## II. MOTIONS REQUIRING RESOLUTION

### A. Motion for an Extension of Time to Reply

On June 23, 2016, Plaintiff requested an extension of time to respond to movants' motion for summary judgment [Doc. 64]. Plaintiff cites his lack of legal experience and limited access to the law library as justification for the extension [*Id.*]. Before this Court could rule on that motion, however, Petitioner filed an initial response and a sur-reply [Docs. 69, 76]. In light of these developments and for good cause shown, the request will be **GRANTED nunc pro tunc**.

### B. Motion to "Compel Discovery"[3]

---

[3] Under the Federal Rules of Civil Procedure, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). If a party wishes to serve more than twenty five interrogatories on a party opponent, "[l]eave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2). *Id.* The rule governing discovery requests states:

> (a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
>
> > (1) to produce and permit the requesting party or its representative to inspect, copy, text, or sample the following items in the responding party's possession, custody, or control:
> >
> > > (A) any designated documents or electronically stored information–including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
> > >
> > > (B) any designated tangible things; or

7

In his motion to compel, plaintiff explains that defendants only responded to the first of two sets of discovery requests and asks the Court to compel a response to the second [Doc. 65 (explaining that the unanswered discovery included a request for specific documents, a set of interrogatories, and a request for production of a security video)]. In their response, Chief Street and Cpt. Smith admit that they initially failed to comply with the second set of discovery requests, explain that that failure was because they were unaware of the request, and claim that they responded after plaintiff's motion to compel brought the omission to their attention [Doc. 67]. In his reply, plaintiff appears to acknowledge that he has now received an answer to the second set of discovery requests, but maintains that the Court should grant his motion because of several "deficiencies" in the response [Doc. 68 (noting that several of the interrogatories were answered with "I have know [sic] way of knowing" or "I wasn't aware")].

The Federal Rule of Civil Procedure that governs motions to compel discovery provides:

(a) Motion for an Order Compelling Disclosure or Discovery.

> (1) *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> (2) *Appropriate Court*. A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.
>
> (3) *Specific Motions*.

---

> (2) to permit entry onto designated lands or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).

8

> (A) *To Compel Disclosure*. If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.
>
> (B) *To Compel Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
>> (i) a deponent fails to answer a question asked under Rule 30 or 31;
>>
>> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>>
>> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>>
>> (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.
>
>> . . . .
>
> (4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

Fed. R. Civ. P. 37(a)(1)-(4).

To the extent that plaintiff requests an order compelling the production of a response to discovery that Chief Street and Cpt. Smith have already submitted, that request will be **DENIED as moot**. To the extent that plaintiff requests an order requiring the production of new answers to interrogatories which he characterizes as deficient, that request will be **DENIED** because plaintiff has neither submitted the required certification of good faith conferral nor identified with specificity the interrogatories at issue.

### C. Motion to Appoint Counsel

For the sixth time during pendency of this case [Docs. 3, 8, 11, 14, 21, 45, 47], plaintiff asks that the Court appoint counsel to assist in litigation of his claims [Doc. 66]. He cites the "many mistakes [that he] made in [the] original complaint," the "many attempts [he has] made to correct [those mistakes]," and the difficulty of conducting an investigation from jail as reasons that counsel is necessary under the circumstances and counsel should be appointed [*Id.*]. The Court disagrees.

The appointment of counsel in a civil case is a matter within the discretion of the Court. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987). After careful consideration of plaintiff's motion, including the type and nature of the case, its complexity, and plaintiff's ability to prosecute his claim, this Court is of the opinion that counsel is not necessary at this time to ensure that the claims are fairly heard. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). The numerous pro se filings and requests for discovery demonstrate that plaintiff is more than capable of navigating the litigation process without assistance. The motion to appoint of counsel will be **DENIED**.

      **D.**      **Motion for Summary Judgment**

          **1.**      **Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion can be limited to a single claim or part of each claim and the moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact proper for the factfinder. *Id.* at 250. The Court does not weigh the evidence, determine the truth of the matter, *id.* at 249, or search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby, Inc.*, 477 U.S. at 250.

**2.     Analysis**

11

Defendants assert two theories in favor of summary judgment: failure to exhaust administrative remedies; and qualified immunity under the "undisputed facts" of this case [Docs. 61, 63]. The Court agrees with the former and thus declines to reach the latter.

  a. **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under [§] 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," *id*. This exhaustion requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That means the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88. In addition, a prisoner must exhaust the grievance process to all levels of appeal before filing his complaint. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Failure to follow the correctional facility's grievance procedures, i.e., exhaust administrative remedies, is fatal. *See Williams v. Moore*, 34 F. App'x 475, 477 (6th Cir. May 7, 2002); *Black v. Tarver*, 21 F. App'x 285, 286 (6th Cir. August 9, 2001).

Chief Street and Cpt. Smith raise failure to exhaust as an affirmative defense and suggest that plaintiff never submitted a grievance claiming that they retaliated against him in violation of the First Amendment [Doc. 63 at 3–4]. While at times difficult to decipher, plaintiff appears to assert three arguments in response. First, plaintiff claims that "paragraph two of [the] amended complaint specifies exhaustion of grievances procedure on the retaliatory acts of late night cell inspections" [Doc. 69; Doc. 69-2 at 1; Doc. 70 ¶¶ 4, 7; Doc. 75 ¶ 5; Doc. 76 at 2, 3]. Second, he suggests that the lost grievance—which he claims complained about the cell doors opening and

12

closing every hour and Officer Buckles's placement of a white supremacist in his cell, exhausted administrative procedures for the retaliation claim against Chief Street and Cpt. Smith [Doc. 69-2 pp. 2, 4; 76 at 2]. Finally, plaintiff argues that the grievance process was unavailable and that his conversations with jail staff made it clear that he "intended to file a civil rights complaint for violation of his civil rights" [Doc. 69-2 at 2–5 (explaining that Chief Street and Cpt. Smith were "aware" of his grievances about "lack of sleep," the "placement of racist gang members" in his cell, and "late night cell inspections"); Doc. 70 ¶¶ 5–6; Doc. 76 at 1–3].

As an initial matter, the Court disagrees that its earlier conclusion that plaintiff had successfully pled a First Amendment claim against Chief Street and Cpt. Smith somehow forecloses movants' exhaustion-based argument for summary judgment. The standard utilized at the screening stage is significantly different from the standard for summary judgment.

"Although failure to exhaust is an affirmative defense under the PLRA and inmates are not required to specifically plead or demonstrate exhaustion in their complaint, they must demonstrate exhaustion when a defendant raises the defense." *Liggett v. Mansfield*, No. 4:08-cv-86, 2009 WL 1392604, at *3 (E.D. Tenn. May 15, 2009) (citing *Jones v. Bock*, 549 U.S. U.S. 199, 216 (2007)). "Thus, once failure to exhaust administrative remedies is raised and demonstrated by the defense, a plaintiff must set forth evidence to show he has complied with the requirements of exhaustion." *Id.* To establish exhaustion, "a plaintiff must demonstrate [that] he presented his grievance[] 'through one complete round' of the established grievance process." *Id.* (quoting *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003)). Plaintiff has failed to provide any evidence that he filed a grievance claiming that Chief Street and Cpt. Smith altered the cell inspection policy as retaliation for his speaking with the state inspector, complaining about the frequent opening and closing of cell doors, or Officer Buckles's

13

placement of a white supremacist in his cell. Plaintiff's unadorned statement that he "exhausted the grievance procedures," while sufficient for purposes of PLRA screening, falls far short of the level of proof required to survive summary judgment.

Further, the Court disagrees that plaintiff's submission of the missing grievance—which he claims complained about the opening and closing of cell doors every hour on the hour and placement of a white supremacist in his cell—somehow exhausted administrative procedures for his claim that Chief Street and Cpt. Smith altered the cell inspection policy as retaliation for those complaints. Exhausting one issue does not obviate a prisoner's obligation to do the same with respect to similar but separate issues. *Thorpe v. Ragozzine*, No. 1:07-cv-155, 2008 WL 1859878, at *3–4 (E.D. Tenn. April 23, 2008). Similarly, exhausting a claim for one defendant does not obviate a prisoner's obligation to do the same with respect to every other defendant. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) (citing *Hartsfield*, 199 F.3d at 309). Here, there is no evidence that plaintiff exhausted the retaliation claim that he now seeks to bring against Chief Street and Cpt. Smith, or that he exhausted any claim with respect to those defendants.

Even if the missing grievance had contained a complaint about Chief Street and Cpt. Smith—which there is no evidence that it did administrators told plaintiff that they had no record of the grievance and, as a result, asked that plaintiff resubmit the same. He did not do so. Failure to file the grievance despite repeated prompting is fatal. *Compare id.* ("Plaintiff should have either refiled his grievance when he was informed in May that the prison had no record of the grievance or provided the receipts in November so he could have proceeded with an appeal. We find, therefore, that plaintiff did not exhaust his administrative remedies as to defendants.").

Finally, the Court disagrees that Carter County Jail's grievance procedure was unavailable to plaintiff because Cpt. Smith failed to respond to an unrelated grievance. "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield*, 199 F.3d at 309 (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). When plaintiff requested information for his § 1983 lawsuit, Chief Street asked plaintiff to "let [him or Cpt. Smith] know" about any problem so that it "might be resolved." He did not do so. Cpt. Smith told plaintiff in person to "address a grievance to the Sheriff" if he found his "answers to the issues were not sufficient." Again, plaintiff did not do so. Thus, the process was available.[4] *Cf. Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding failure to respond to grievance resulted in exhaustion for that specific claim because plaintiff was not able to proceed to next level of grievance process without a response).

The fact that Chief Street and Cpt. Smith might have had "notice" of plaintiff's intent to seek some form of relief based on a violation of his civil rights does not excuse plaintiff's failure to avail himself of the grievance procedures made available to him by Carter County Jail.

---

[4] To the extent that plaintiff suggests the process at Carter County Jail became unavailable when he was transferred to Johnson County Jail, he has failed to support that bald assertion. Generally, "[t]he transfer of a prisoner from one facility to another does not render the grievance procedure at the transferor facility 'unavailable' for purposes of exhaustion." *Napier v. Laurel Cnty, Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (quoting *Blakey v. Beckstrom*, No. 06-163-HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007)). Plaintiff has provided no evidence that Johnson County Jail or Carter County Jail lacked the ability to handle inter-facility grievances or that he made any effort to file such a grievance but was unable to do so. As such, he cannot rely on that argument to counter movants' failure to exhaust defense. *See id.* ("If Napier had attempted to follow the letter of the grievance policy, and was unsuccessful, this would be a closer question.").

Because the Court finds that he did not exhaust administrative remedies for the retaliation claim against Chief Street and Cpt. Smith, he is barred from bringing that cause of action under § 1983.

**E.    Motions to "Show Cause" and "Deem Service of Process Effective"**

On March 16, 2016, this Court entered a Memorandum and Order denying plaintiff's motion for default judgment against Officer Buckles and requiring that plaintiff show cause, "within [15] days[,] . . . as to why [Officer] Buckles should not be dismissed from this action under Rule 4(m) of the Federal Rules of Civil Procedure" [Doc. 56]. The relevant rule reads as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion to dismiss or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (2014). For purposes of the instant case, the Court waited to issue its show cause order until the United States Marshals had the opportunity to attempt service of process on Officer Buckles at all addresses of which the Court was aware [Docs. 7, 12, 56].

Plaintiff submitted two documents within the period permitted by the show cause order—a "reply" and a "motion to show cause." In the latter filing, plaintiff explains that he attempted service of process on Officer Buckles at Carter County Sheriff's Department, but that administrators returned that summons with a notation that informed plaintiff Officer Buckles no longer worked for the department [Doc. 58]. He appears to rely on the reasonableness of attempting service of process on Officer Buckles at what plaintiff believed to be his place of employment as justification for the failure to obtain service of process within the period required by Rule 4(m) [Doc. 58].

16

Several months later, on August 10, 2016, plaintiff submitted a motion "to deem service of process on [Officer] Buckles effective" [Doc. 74]. In that motion, he reiterates the circumstances surrounding his unsuccessful attempts at service of process and, without providing any additional details or justification, requests that service of process be deemed "effective" based on plaintiff's belief that Officer Buckles is "willfully avoiding service" [*Id.*].

Because neither claim provides justification for the action requested, both the motion to show cause and the motion to deem service of process effective will be **DENIED**. The Court has done all that it can to assist plaintiff in his attempts to serve Officer Buckles and plaintiff has not provided any factual support for his bald assertion that those prior attempts at service of process were unsuccessful because Officer Buckles is or was willfully avoiding the same.

Normally, a dismissal on Rule 4(m) grounds is without prejudice. However, this observation, while technically correct, is of little practical relevance given the fact the claim against Officer Buckles would be barred by the applicable statute of limitations even if plaintiff were permitted to refile it today. *See* Moore's Federal Practice, § 4.82[3] ("[A]ny dismissal order [under Rule 4(m)] after expiration of the statute of limitations for failure to establish good cause will be, in effect, with prejudice since plaintiff will be precluded from commencing a new action."). Plaintiff's claim against Officer Buckles arose from an incident that plaintiff claims occurred in January of 2014, and the applicable statute of limitations for that incident is one year.[5]

---

[5] Complaints pursuant to § 1983 in Tennessee are subject to a one-year statute of limitations running from the date on which the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(1)(B); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Whisnant v. Stokes*, No. 1:08-CV-229, 2008 WL 4763853 (E.D. Tenn. Oct. 28, 2008). Although the statute of limitations for § 1983 is borrowed from state law, a § 1983 action accrues and the statutory period begins to run according to federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

17

Because plaintiff has not provided good cause for the failure to effectuate timely service of process, his causes of action against Officer Buckles—placement of a racist gang member in plaintiff's cell as retaliation for plaintiff speaking to jail inspectors about the jail doors being opened every hour—will be **DISMISSED WITH PREJUDICE**.

### F. Remaining Cause of Action: *Sua Sponte* Dismissal of John Doe Jailers

The foregoing leaves plaintiff with a single cause of action: that the three John Doe jailers also retaliated against him for his act of speaking to jail inspectors about the opening and closing of cell doors every hour by placing a racist gang member in his cell. The Court raises the statute of limitations *sua sponte*. Like the claim against Officer Buckles, the statute of limitations began to run at the time of the alleged violation—in either February or March of 2014 [Doc. 76 (noting that the second placement of a white supremacist in plaintiff's cell occurred "in as many months")].

Plaintiff has made no effort to amend his complaint to name the John Doe defendants and the statute of limitations applicable for those defendants has now passed. As such, plaintiff's cause of action against the John Doe jailers will be **DISMISSED WITH PREJDUCE**. *See Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (dismissing *sua sponte* and with prejudice the plaintiff's claim against John Doe police officer for civil rights violations because the plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *see also Smith*

---

"Typically, the statute of limitations for filing an action alleging a constitutional violation begins to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *See Hessmer v. Bad Gov't*, No. 3:12-cv-590, 2012 WL 3945315, at *8 (M.D. Tenn. Sept. 10, 2012) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). Thus, based on Plaintiff's amended complaint and numerous pro se filings, his cause of action against Officer Buckles accrued when the alleged retaliatory act occurred—January of 2014.

18

*v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when, like here, plaintiff "simply did not know whom to sue or opted not to find out within the limitations period" and "waited until the last day of the . . . limitations period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time"); *Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159, at *4 (E.D. Tenn. Feb. 6, 2013) (stating that Rule 15(c) allows relation back for the mistaken identification of defendants, not for "John Doe" defendants).

### III. CONCLUSION

For these reasons, the motion for summary judgment [Doc. 61] will be **GRANTED** and the cause of action against Chief Street and Cpt. Smith will be **DISMISSED WITH PREJUDICE**. Plaintiff's motion for an extension of time [Doc. 64] will be **GRANTED nunc pro tunc**, and motions to show cause, to compel, for counsel, and to deem service of process effective [Docs. 58, 65, 66, 74] will be **DENIED.** Because plaintiff failed to effectuate service of process and the statute of limitations has lapsed, the cause of action against Officer Buckles will be **DISMISSED WITH PREJUDICE**. Because plaintiff failed to name the John Doe jailers within the statute of limitations, the cause of action against those defendants will be **DISMISSED WITH PREJUDICE**. The Clerk of Court will be **DIRECTED** to **CLOSE** the case.

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE